UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



**FILED**

APR 1 5 2005

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

Freedom Mortgage Corp.,

      Plaintiff,

v.

Burnham Mortgage Inc., Exeter Title Company,
Ticor Title Insurance Company,
James C. Peddle, Derrick Davis, Eric Vehoc,
Market Value Appraisal, Inc., Maya N. Jordan,
Larry D. Burks, Kevin R. Brisker,
John Jeffrey Hlava, Adam Bat, Adam Butar,
Zbigniew Rymarz, Waldemar Florkiewicz,
Dorothy Spann, Charlene Adams, Grosz Piotr,
Barbara Odrzywolska, Leszek Dobrowski, and
Bogdan Pawlak,

      Defendants.

No. 03 C 6508

Judge Mark Filip

## DEFENDANT HLAVA'S LOCAL RULE 56.1
## STATEMENT OF MATERIAL FACTS

Defendant, John Jeffrey Hlava ("Hlava"), submits this Local Rule 56.1 Statement of Material Fact in support of his memorandum on damages. The statements below are taken as true <u>solely</u> for purposes of the damages briefs to show that even if Freedom prevails on its claims, it cannot recover the damages it seeks.[1]

**The Parties**

1.     Freedom Mortgage Corp. ("Freedom") is a New Jersey corporation with its principal place of business in New Jersey. Freedom is engaged in the business of making mortgage loans. Second Amended Complaint ("Complaint") ¶ 1.

2.     Burnham Mortgage, Inc. ("Burnham") is an Illinois corporation with its principal place of business in Chicago, Illinois. Burnham is engaged in the business of originating,

---

[1] Hlava disputes many of these "facts" and reserves the right to deny them for all aspects of this cause other than the consideration of damages now before the court.

brokering, making and selling mortgage loans. Burnham originated, brokered and sold at least nine mortgage loans to Freedom. Complaint ¶ 2.

3.     Exeter Title Company ("Exeter") is an Illinois corporation with its principal place of business in Chicago, Illinois. Exeter is a title company and was the title company/closing agent for the mortgage transactions at issue originated by Burnham and purchased by Freedom. Complaint ¶ 3.

4.     Ticor Title Company ("Ticor") is a California corporation with offices in Chicago, Illinois. Ticor is engaged in the business of providing title insurance and provided title insurance and a closing protection letter on the mortgage loan transactions at issue. Complaint ¶ 4.

5.     James C. Peddle, Derrick Davis and Eric C. Vehoc are citizens of the State of Illinois and officers of Burnham. Complaint ¶ 5-7.

6.     Market Value Appraisal, Inc. ("MVA") is an Illinois corporation with its principal place of business in Chicago, Illinois. It is engaged in business of preparing and providing appraisals for real property. Defendant Maya Jordan is a citizen of the State of Illinois and MVA's President. Complaint ¶ 8-9.

7.     Larry D. Burks and Kevin R. Brisker are citizens of the State of Illinois and are engaged in the business of preparing and providing appraisals for real property. Complaint ¶ 10-11.

8.     John Jeffrey Hlava is a citizen of the State of Illinois and an attorney licensed to practice in the State of Illinois. According to Freedom, Hlava was an officer of Exeter. Complaint ¶ 12.

9.     Adam Bat, Adam Butar, Zbigniew Rymarz, Waldemar Florkiewicz, Dorothy Spann, Charlene Adams, Kuba Jasny a/d/a Grosz Piotr, Barbara Odrzywolska, Marek Maka a/k/a Leszek Dombrowski, Bogdan Pawlak, Krystian Zebrowski and Piotr Ulsozonekic are

2

citizens of the State of Illinois. Complaint ¶ 13-24. They were buyers or sellers of the subject properties. Complaint ¶ 56-8, 74, 75, 87-9, 101, 102, 105, 113-15, 126, 136, 159.

## Jurisdiction and Venue

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332(a) in that the matter in controversy is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Complaint ¶ 25.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(a) in that all of the defendants reside in this district and a substantial part of the acts and omissions alleged occurred in this district.

## The Alleged Scheme

12. On June 18, 2001, Freedom, as buyer, and Burnham, as broker, entered into a Broker Agreement (the "Agreement"). Freedom purchased residential mortgage loans brokered, originated and made by Burnham pursuant to that Agreement. Complaint ¶ 27, Complaint Exhibit A.

13. Among the residential mortgage loans Burnham brokered, originated and made to Freedom were the nine mortgage loans at issue in this case. Complaint ¶ 28.

14. In the Agreement, Burnham made certain representations and warranties to induce Freedom to purchase each of the nine mortgage loans at issue including a warranty that none of the statements or information in any loan package will contain any untrue or erroneous statements and that all real estate appraisals made in connection with each loan shall have been performed in accordance with Freedom's underwriting guidelines and industry standards. Complaint ¶ 30.

15. According to Freedom, Burnham prepared a package of documents that typically included false documentation designed to make the deal legitimate and the borrowers

3

creditworthy. Complaint ¶ 37.

16.     According to Freedom, Burnham led Freedom to believe that it contacted appraisers who had appraised the property at issue in an amount that would cover a loan to value ratio between 60% and 90% of the purchase price. However, unknown to Freedom, the appraisals of the property at issue were knowingly and intentionally falsified so that the loan to value ratios were well in excess of 100% of the actual property values. Complaint ¶ 39.

17.     According to Freedom, Burnham, in conjunction with the borrowers and sellers, schemed with the appraisers to issue fraudulent appraisals for the properties. Complaint ¶ 40.

18.     According to Freedom, Burnham submitted mortgage loan packages that included false or inaccurate information from the title companies and Hlava regarding the borrowers' purported cash payments at closing, where the cash at settlement payments were in excess of what the borrowers' income and assets revealed they could pay. Complaint ¶ 42.

19.     Hlava represented each of the sellers for these properties. Complaint ¶ 51.

20.     Ticor provided the title insurance and a closing protection letter. Complaint ¶ 52, Complaint Exhibit B.

### The 735 North Springfield Loan Transaction

21.     On or about September 8, 2001, Burnham submitted a loan package to Freedom from Bat to finance the purchase of this property. Complaint ¶ 58.

22.     According to Freedom, Bat misrepresented financial and other information on the loan application. Complaint ¶ 59.

23.     Burnham retained Burks to appraise this property. Complaint ¶ 60.

24.     According to Freedom, on August 27, 2001, Burks appraised the property at $270,000. Complaint ¶ 61.

25.     Freedom loaned Bat $243,000 in reliance on this appraisal. Complaint ¶ 63.

4

26.     Freedom resold the loan to an investor.  Complaint ¶ 66.

27.     Bat defaulted on the loan.  Freedom repurchased the loan pursuant to the investor's demand.  Complaint ¶ 67- 9.

28.     According to Freedom, the property was appraised on April 9, 2002 and found to be worth only $175,000.  Complaint ¶ 70.

29.     According to Freedom, Burks grossly exaggerated and fraudulently misrepresented the property's value.  Complaint ¶ 71.

30.     On or about August 7, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify Freedom in accordance with their Agreement.  Burnham refused. Complaint ¶ 73.

### The Foreclosure of the 735 North Springfield Property

31.     On or about June 25, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure for this property in the Circuit Court of Cook County, Illinois, Case No. 02 CH 11717.  Foreclosure Complaint.[2]

32.     The Judgment of Foreclosure and Sale was entered on September 12, 2002. Judgment of Foreclosure.  The amount due Freedom pursuant to the Judgment was $260,736.69 and included an award of attorneys' fees.  The judgment also provided for interest and any additional costs incurred by Freedom through the redemption date.  Id.

33.     The judicial sale for the property was conducted on March 12, 2003.  Report of Sale and Distribution ("Report").

34.     The Report provides for disbursement of $273,089.18 to Freedom, which includes interest, publication costs and other post-judgment expenses (including updated title

---

[2] The source documents for the foreclosure suits are in Ticor/Burnham's Exhibit Index.

5

and the selling officer's commission). Id.

35.     Freedom, the successful bidder, bid $133,700, leaving a deficiency of 139,389.18. Id.

36.     The sale was approved on April 3, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Possession. The Order found that the sale was fairly and properly made. Id.

37.     Freedom knew prior its bid at the judicial sale of the 735 North Springfield property (held on March 12, 2003), that according to the new appraisal, the property was worth $175,000 even though this property was initially appraised at $270,000. Complaint ¶ 61, 70, Report of Sale and Distribution.

**The 708 North Drake Loan Transaction**

38.     On or about September 15, 2001, Burnham submitted a mortgage loan application package to Freedom from Bat to finance the purchase of this property for $81,500. Complaint ¶ 74.

39.     According to Freedom, Bat misrepresented financial and other information on the loan application. Complaint ¶ 75.

40.     Burnham retained Burks to appraise this property. According to Freedom, on or about August 27, 2001, Burks appraised the property at $270,000. Complaint ¶ 77.

41.     Freedom loaned Bat $243,000 in reliance of on this appraisal. Complaint ¶ 78.

42.     Freedom resold the loan to an investor. Complaint ¶ 81.

43.     Bat defaulted on the loan. Freedom repurchased the loan pursuant to the investor's demand. Complaint ¶ 82-3.

44.     According to Freedom, the property was reappraised on July 1, 2002 and found to be worth only $169,000. Burks' appraisal was not performed in accordance with industry

6

standards and grossly exaggerated the overall value of this property. Complaint ¶ 84.

45.     On or about August 27, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify Freedom in accordance with their Agreement. Burnham refused. Complaint ¶ 86.

**The Foreclosure of the 708 North Drake Loan**

46.     On or about May 23, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure for this property in the Circuit Court of Cook County, Illinois, Case No. 02 CH 9984. Foreclosure Complaint.

47.     The Judgment of Foreclosure and Sale was entered on February 5, 2003. The amount due Freedom pursuant to the Judgment was $270,624.46 and included an award of attorneys' fees. The Judgment also provided for interest and any additional costs incurred by Freedom through the redemption date. Id.

48.     The judicial sale of the property was conducted on July 29, 2003. Report of Sale and Distribution.

49.     The Report provides for disbursement of $290,304.86 to Freedom, which includes interest, publication costs and other post-judgment expenses (including updated title and the selling officer's commission). Id.

50.     Freedom, the successful bidder, bid $290,304.86. Id.

51.     The sale was approved on August 6, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Awarding Possession. The Order found the sale was fairly and properly made. Id.

52.     Freedom knew prior to its bid at the judicial sale of the 708 North Drake property (held on July 29, 2003) that according to the new appraisal, the property was worth $169,000 even though this property was initially appraised at $270,000. Complaint ¶ 77, 84, Report of

7

Sale.

### The 728 North Hamlin Loan Transaction

53.     On or about September 20, 2001, Burnham submitted a loan package to Freedom from Bat to finance the purchase of this property. Complaint ¶ 89.

54.     According to Freedom, Bat misrepresented financial and other information on the loan application. Complaint ¶ 90.

55.     Burnham retained Burks to appraise this property. According to Freedom, on or about August 27, 2001, Burks appraised this property at $270,000. Complaint ¶ 91.

56.     Freedom funded a mortgage loan to Bat for $243,000 in reliance on the appraisal. Complaint ¶ 92.

57.     Freedom resold the mortgage loan to an investor. Complaint ¶ 95.

58.     Bat defaulted on the loan. Freedom repurchased the loan pursuant to the investor's demand. Complaint ¶ 96.

59.     According to Freedom, the property was reappraised on July 1, 2002 and found to be worth only $148,000. Burks' appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of this property. Complaint ¶ 97.

60.     On or about August 27, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify Freedom in accordance with their Agreement. Burnham refused. Complaint ¶ 99.

### The Foreclosure of the 728 North Hamlin Loan

61.     On or about May 21, 2002, Freedom through a nominee, filed its Complaint for Foreclosure for this property in the Circuit Court of Cook County, Illinois, Case No. 02 CH 9789. Foreclosure Complaint.

62.     The Judgment of Foreclosure and Sale was entered on January 29, 2003. The

8

amount due Freedom pursuant to the Judgment was $273,675.13 and included an award of attorney's fees. The Judgment also provided for interest and any additional costs through the redemption date. Id.

63.    The judicial sale of the property was conducted on June 27, 2003. Report of Sale and Distribution ("Report").

64.    The Report provides for disbursement of $284,445.65 to Freedom, which includes interest, publication costs and other post-judgment expenses (including advances since the judgment date and the selling officer's commission). Id.

65.    Freedom, the successful bidder, bid $284,445.65. Id.

66.    The sale was approved on July 23, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Possession. The Order finds that the sale was fairly and properly made. Id.

67.    Freedom knew prior to its bid at the judicial sale of the 728 North Hamlin property (held on June 27, 2003) that according to the new appraisal, the property was worth $148,000, even though this property was initially appraised at $270,000. Complaint ¶ 91, 97, Report of Sale.

### The 419 North Drake Loan Transaction

68.    On or about December 4, 2001, Burnham submitted a mortgage loan application to Freedom from Rymarz to finance the purchase of this property. Complaint ¶ 102.

69.    According to Freedom, Rymarz misrepresented financial and other information in the loan application. Complaint ¶ 103.

70.    Burnham retained Brisker to appraise this property. According to Freedom, Brisker appraised the property on November 15, 2001 at $297,000. Complaint ¶ 104.

71.    Freedom loaned Rymarz $237,000 in reliance on the appraisal. Complaint ¶

9

105.

72.    Freedom resold this loan to an investor. Complaint ¶ 108.

73.    Rymarz defaulted on the loan and the investor demanded that Freedom repurchase the loan. Complaint ¶ 109.

74.    According to Freedom, the property was reappraised on July 1, 2002 and found to be worth only $160,000. Brisker's appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of the property. Complaint ¶ 110.

75.    On or about August 7, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify Freedom in accordance with their Agreement. Burnham refused. Complaint ¶ 112.

### The Foreclosure of the 419 North Drake Loan

76.    On or about June 25, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure for this property in the Circuit Court of Cook County, Illinois, Case No. 02 CH 11716. Foreclosure Complaint.

77.    The Judgment of Foreclosure and Sale was entered on September 6, 2002. The amount due Freedom pursuant to the Judgment was $253,403.68 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs through the redemption date. Id.

78.    The judicial sale for the property was conducted on March 12, 2003. Selling Official's Report of Sale and Distribution ("Report").

79.    The Report provides for disbursement of $268,057.07 to Freedom, which includes interest, publication costs and other post judgment expenses (including Freedom's advances since the judgment and the selling official's commission). Id.

80.    Freedom, the successful bidder, bid $139,121.50, leaving a deficiency of

10

$128,935.57. Id.

81.    The sale was approved on April 8, 2003. Order Approving Selling Officer's Report of Sale and Distribution and Order for Possession. The Order found that the sale was in all respects legal and proper. Id.

82.    Freedom knew prior to its bid at the judicial sale of the 419 North Drake property (held on March 12, 2003), that although this property was initially appraised at $297,000 according to the new appraisal, the property was worth $160,000. Complaint ¶ 104, 110, Report of Sale.

### The 4112 West Potomac Loan Transaction

83.    On or about January 9, 2002, Burnham submitted a mortgage loan application to Freedom from Rymarz concerning this property. Complaint ¶ 115.

84.    According to Freedom, Rymarz misrepresented financial and other information on the loan application. Complaint ¶ 116.

85.    Burnham retained Brisker to appraise this property. According to Freedom, on or about January 20, 2002, Brisker appraised this property at $339,000. Complaint ¶ 117.

86.    In reliance on the appraisal, Freedom funded a mortgage loan for $271,200 to Rymarz. Complaint ¶ 118.

87.    Freedom resold the mortgage loan to an investor. Complaint ¶ 121.

88.    Rymarz defaulted on the loan and the investor demanded that Freedom repurchase the loan. Complaint ¶ 122.

89.    According to Freedom, the property was reappraised on October 15, 2002 and found to be worth only $150,000. Brisker's appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of the property. Complaint ¶ 123.

90.    On or about August 7, 2002, Freedom demanded that Burnham purchase the

11

loan or otherwise indemnify Freedom in accordance with their Agreement. Burnham refused. Complaint ¶ 125.

### The Foreclosure of the 4112 West Potomac Loan

91.　On or about September 26, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure in the Circuit Court of Cook County, Illinois, Case No. 02 CH 17713. Foreclosure Complaint.

92.　The Judgment of Foreclosure and Sale was entered on April 15, 2003. The amount due Freedom pursuant to the Judgment was $294,954.61 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs incurred by Freedom through the redemption date. Id.

93.　The judicial sale for this property was conducted on July 17, 2003. Report of Sale and Distribution ("Report").

94.　The Report provides for disbursement of $312,457.33 to Freedom, which includes interest, publication costs and other post-judgment expenses (including taxes and the selling official's commission). Id.

95.　Freedom, the successful bidder, bid $312,457.33. Id.

96.　The sale was approved on October 7, 2003. Order Approving Selling Officer's Report of Sale and Distribution and Order for Possession. The Order found that the sale was fairly and properly made.

97.　Freedom knew prior to its bid at the judicial sale of the 4112 West Potomac property (held on July 17, 2003), that although this property was initially appraised at $339,000, according to the new appraisal, the property was worth $150,000. Complaint ¶ 117, 123, Report of Sale.

### The 7953 South Escanaba Loan Transaction

12

98.    On or about January 10, 2002, Burnham submitted a loan application package to Freedom from Florkiewicz concerning this property. Complaint ¶127.

99.    According to Freedom, Florkiewicz misrepresented financial and other information in the loan application. Complaint ¶ 128.

100.   Burnham retained Burks to appraise this property. According to Freedom, on October 10, 2001 Burks appraised this property at $280,000. Complaint ¶ 129.

101.   In reliance on the appraisal, Freedom funded a mortgage loan for $224,000. Complaint ¶ 130.

102.   Freedom resold the mortgage loan to an investor. Complaint 131.

103.   Florkiewicz defaulted on the loan and the investor demanded that Freedom repurchase the loan. Complaint ¶ 132.

104.   According to Freedom, the property was reappraised on October 15, 2002 and found to be worth only $200,000. Burks' appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of the property. Complaint ¶ 133.

105.   On or about August 7, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify Freedom in accordance with their Agreement. Burnham refused. Complaint ¶ 135.

**The Foreclosure of the 7953 South Escanaba Loan**

106.   On or about September 20, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure in the Circuit Court of Cook County, Illinois, Case No. 02 CH 17205. Foreclosure Complaint.

107.   The Judgment of Foreclosure and Sale was entered on February 11, 2003. The amount due Freedom pursuant to the Judgment was $242,601.75 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs incurred by

13

Freedom through the redemption date. Id.

108.    The judicial sale for this property was conducted on May 13, 2003. Report of Sale and Distribution ("Report").

109.    According to the Report, with interest, publication costs and other post-judgment expenses (including the selling officer's commission), the amount due Freedom was $244,211.37. Id.

110.    Freedom, the successful bidder, bid $143,500, leaving a deficiency of $100,711.37. Id.

111.    The sale was approved on May 27, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Order for Possession. The Order found that the sale was fairly and properly made.

112.    Freedom knew prior to its bid at the judicial sale of the 7953 South Escanaba property (held on May 13, 2003), that according to the new appraisal, the property was worth $200,000, even though this property was initially appraised at $280,000. Complaint ¶ 129, 135, Report of Sale.

### The 536 West 61ˢᵗ Place Loan Transaction

113.    On or about January 14, 2002, Burnham submitted a mortgage loan application package to Freedom from Florkiewicz concerning this property. Complaint ¶ 137.

114.    According to Freedom, Florkiewicz misrepresented financial and other information on the loan application. Complaint ¶ 138.

115.    Burnham retained Jordan to appraise the property. According to Freedom, on January 11, 2002, Jordan appraised this property at $135,000. Complaint ¶ 139.

116.    In reliance on the appraisal, Burnham funded a mortgage loan of $108,000. Complaint ¶ 140.

14

117.    Freedom resold the mortgage loan to an investor. Complaint ¶ 143.

118.    According to Freedom, the property was reappraised on October 14, 2002 and found to be worth only $90,000. Jordan's appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of the property. Complaint ¶145.

119.    On or about August 7, 2002, Freedom demanded that Burnham purchase the loan or otherwise indemnify it in accordance with their Agreement. Burnham refused. Complaint ¶ 147.

### The Foreclosure of 536 West 61ˢᵗ Place

120.    On or about September 20, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure in the Circuit Court of Cook County, Illinois, Case No. 02 CH 17204. Foreclosure Complaint.

121.    The Judgment of Foreclosure and Sale was entered on Mach 13, 2003. The amount due Freedom pursuant to the Judgment was $119,455.75 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs incurred by Freedom through the redemption date. Id.

122.    The judicial sale for this property was conducted on June 17, 2003. Report of Sale and Distribution ("Report").

123.    The Report provides for disbursement of $122,998.95 to Freedom, which includes interest, publication costs and other post-judgment expenses (including the selling officer's commission). Id.

124.    Freedom, the successful bidder, bid $71,950, leaving a deficiency of $51,048.95. Id.

125.    The sale was approved on June 26, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Order for Possession. The Order found that the sale was

15

fairly and properly made.

126.    Freedom knew prior to its bid at the judicial sale of the 536 West 61st property (which was held on June 17, 2003) that according to the new appraisal, the property was worth $90,000, even though this property was initially appraised at $135,000. Complaint ¶ 139, 145, Report of Sale.

### The 708 North Spaulding Loan Transaction

127.    On or about October 21, 2001, Burnham submitted a loan package to Freedom from Louchak concerning this property. Complaint ¶ 149.

128.    According to Freedom, Louchak misrepresented financial and other information on the loan application. Complaint ¶ 150.

129.    Burnham retained Brisker to appraise this property. According to Freedom, on October 27, 2001, Brisker appraised this property at $270,000. Complaint ¶ 151.

130.    In reliance on the appraisal, Freedom funded a mortgage loan for $243,000. Complaint ¶ 152.

131.    Freedom resold the mortgage loan to an investor. Complaint ¶ 155.

132.    Louchak defaulted on the loan and the investor demanded that Freedom repurchase the loan. Complaint ¶ 156.

133.    According to Freedom, the property was reappraised on July 6, 2003 and found to be worth only $118,000. Brisker's appraisal was not performed in accordance with industry standards and grossly exaggerated the overall worth of this property. Complaint ¶ 157.

### The Foreclosure of the 708 North Spaulding Loan

134.    On or about June 26, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure in the Circuit Court of Cook County, Illinois, Case No. 02 CH 11817. Foreclosure Complaint.

16

135. The Judgment of Foreclosure and Sale was entered on September 6, 2003. The amount due Freedom pursuant to the Judgment was $262,276.61 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs incurred by Freedom through the redemption. Id.

136. The judicial sale of this property was conducted on March 26, 2003. Report of Sale and Distribution ("Report").

137. The Report provides for disbursements of $280,812.71 to Freedom, which includes interest, publication costs and other post-judgment expenses (including the selling officer's commission). Id.

138. Freedom, the successful bidder, bid $197,100 leaving a deficiency of $83,712.71. Id.

139. The sale was approved on April 8, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Order for Possession. The Order found that the sale was fairly and properly made.

140. [left blank]

**The 735 North Christiana Loan Transaction**

141. On or about October 15, 2001, Burnham submitted a mortgage loan application package to Freedom from Louchak concerning this property. Complaint ¶ 161.

142. According to Freedom, Louchak misrepresented financial and other information on the loan application. Complaint ¶ 162.

143. Burnham retained Brisker to appraise this property. According to Freedom, on October 27, 2001, Brisker appraised this property at $270,000. Complaint ¶ 163.

144. In reliance on the appraisal, Freedom funded a mortgage loan for $243,000. Complaint ¶ 164.

17

145. Freedom resold the mortgage loan to an investor. Complaint ¶ 167.

146. Louchak defaulted on the loan and the investor demanded that Freedom repurchase the loan. Complaint ¶ 168.

147. According to Freedom, the property was reappraised on September 14, 2002 and found to be worth only $155,000. Brisker's appraisal was not performed in accordance with industry standards and grossly exaggerated the overall value of the property. Complaint ¶ 169.

**The Foreclosure of the 735 North Christiana Loan**

148. On or about June 26, 2002, Freedom, through a nominee, filed its Complaint for Foreclosure in the Circuit Court of Cook County, Illinois, Case No. 02 CH 11816. Foreclosure Complaint.

149. The Judgment of Foreclosure was entered on September 6, 2002. The amount due Freedom pursuant to the Judgment was $260,316.80 and included an award of attorneys fees. The Judgment also provided for interest and any additional costs incurred by Freedom through the redemption date. Id.

150. The judicial sale for this property was conducted on March 26, 2003. Report of Sale and Distribution ("Report").

151. The Report provides for distribution of $277,309.30 to Freedom, which includes interest, publication costs and other post-judgment expenses (including the selling officer's commission). Id.

152. Freedom, the successful bidder, bid $195,152, leaving a deficiency of $82,157.30. Id.

153. The sale was approved on April 8, 2003. Order Approving Report of Sale and Distribution, Confirming Sale and Order for Possession. The Order found that the terms of the sale were fair and conscionable.

154.    Freedom knew prior to its bid at the judicial sale of the 735 Christiana property (held on March 26, 2003), that according to the new appraisal, the property was worth $155,000, even though this property was initially appraised at $270,000. Complaint ¶ 163, 169, Report of Sale.

**Freedom's Mortgage Fraud Suit**

155.    Freedom commenced this action on February 12, 2003 by filing suit in the United States District Court of New Jersey against Burnham, Exeter and Ticor, alleging mortgage fraud. Original Complaint.

David A. Baugh – ARDC No.: 6182391
Lynn Urkov Thorpe – ARDC No.: 3123692
Mora, Baugh, Waitzman & Unger, LLC
55 W. Monroe St., Suite 600
Chicago, IL 60603
312-759-1400

19